IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA        )
                                )
v                               )        Civ. Case No. 2:03cv1125-ID
                                )                  (WO)
IVORY THOMAS                    )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This case is before the court on the defendant's pro se motion to vacate, set aside, or

correct sentence filed pursuant to 28 U.S.C. § 2255.  On July 18, 2001, Ivory Thomas

("Thomas") was convicted of conspiracy to possess with intent to distribute more than 5

kilograms of cocaine, more than 5 grams of cocaine base, and more than 1000 kilograms of

marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 and attempt to possess with intent

to distribute 1.2 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).  On December

17, 2001, Thomas was sentenced to concurrent sentences of 78 months' imprisonment

followed by 5 years' supervised release.  On November 15, 2002, the Eleventh Circuit Court

of Appeals affirmed his convictions.[1]  *U.S. v. Thomas*, 54 Fed.Appx. 684 (11th Cir. 2002)

---

[1] On appeal, Thomas raised the following issues:

(1)   Whether the evidence was insufficient to support his convictions, or in
      the alternative, whether the trial court should have granted his motion for
      acquittal;

(2)   Whether the trial court erred in failing to suppress evidence from the
      search of his vehicle;

(3)   Whether Thomas should have been granted a decrease in his offense
      level pursuant to § 3B1.2 and § 5H1.2 U.S.S.G. §§ 3 B1.2 and 5H1.2;
      and

(4)   Whether his base level offense should have been calculated pursuant to

(continued...)

(Table).

On November 6, 2003, Thomas filed a motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255.  In his motion, Thomas asserts the following claims:

1.   Trial counsel was ineffective in failing to request a jury instruction that would have allowed the jury to base its verdict of guilt on a lesser-included offense of trafficking in paraphernalia.

2.   Petitioner was convicted in violation of his due process rights and in violation of his right to effective assistance of counsel when the jury was allowed to convict him based on evidence that was admitted in violation of his right to remain silent.

3.   Counsel was ineffective in allowing petitioner to be convicted in violation of his right to confrontation.

4.   Trial counsel was ineffective in conceding that a conspiracy was in fact proven thus undermining his otherwise effective argument for a judgment of acquittal.

5.   Petitioner was convicted in violation of his due process rights and his right to effective assistance of counsel when the jury was allowed to consider false and misleading that he was part of a "clique" that was on trial.

6.   Petitioner was convicted in violation of his due process and his right to effective assistance of

---

[1](...continued)
    §2.D.1.1, U.S.S.G. §2D1.1(a)(3) and (4)(7).  *U.S. v. Thomas*, [NO. 02-10101 II] 2002 WL 32164135 (11th Cir. April 1, 2002).

counsel when the government (in such a close case) was allowed to argue to the jury that a conspirator need not know every member of the conspiracy before a verdict of guilt may be returned.

7.    Petitioner's counsel was ineffective in failing to request a specific verdict form as to the multiple drug types that were charged in the conspiracy count of conviction.

8.    Petitioner's due process rights and his right to a direct appeal were both violated when, because of the enormous amounts of alterations of the trial record, the appellate court was misled and thus affirmed his conviction.

9.    Because of the cumulative effect of the errors, a new trial is warranted.

(Doc. No. 1 at pp. 4A-4G.)

The Government responded to Thomas' § 2255 motion, asserting that Thomas' claims are without merit.  (Doc. No. 9.)  Thomas was afforded an opportunity to respond to the Government's submission and has done so.  (Doc. Nos. 10 & 11.)  After due consideration, the court concludes that Thomas' motion should be denied.

## II.  DISCUSSION

### A.  Ineffective Assistance of Counsel

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  To prevail on a claim of ineffective assistance of counsel, a movant must satisfy both prongs of the test articulated by the United States Supreme Court in *Strickland v.*

*Washington*, 466 U.S. 668 (1984).  The performance prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment.  *Strickland,* 466 U.S. at 687-89.  The prejudice prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense.  *Id*. at 687.

To succeed on a claim of ineffective assistance, a movant must first establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*.  In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance.  *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

There is a strong presumption that counsel's performance was reasonable and adequate, and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see Strickland*, 466 U.S. at 689.  Review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel, based on facts "as they were known to counsel *at the time of the representation*." *U.S. v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992) (emphasis in original); *see Strickland*, 466 U.S. at 690.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

4

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." *Strickland*, 466 U.S. at 689.

The prejudice component of the *Strickland* test focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *See Strickland*, 466 U.S. at 687.  Unreliability or unfairness is not established if counsel's assistance did not deprive the defendant of any constitutionally protected right. *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).

To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice." *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 693).

Unless a movant satisfies both prongs of the *Strickland* inquiry, relief should be denied.  *Strickland*, 466 U.S. at 687.  Accordingly, a court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Id*. at 697. *See, e.g., Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy

5

the prejudice prong, the court need not address the performance prong").

### *1. The Lesser-Included Offense*

Thomas asserts that trial counsel was ineffective for failing to request a jury instruction on trafficking in drug paraphernalia.  Specifically, Thomas contends that trafficking in drug paraphernalia is a lesser-included offense of  conspiracy to possess with intent to distribute more than 5 kilograms of cocaine, more than 5 grams of cocaine base, and more than 1000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 and attempt to possess with intent to distribute 1.2 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1).

Rule 31(c), FED.R.CRIM.P., provides that a defendant may be found guilty of any of the following lesser offenses:

> (1)    an offense necessarily included in the offense
>         charged;
>
> (2)    an attempt to commit the offense charged;
>
> (3)    an attempt to commit an offense necessarily
>         included in the offense charged, if the attempt is
>         an offense in its own right.

"Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c)."  *See Schmuck v. U.S.*, 489 U.S. 705, 716 (1989).

It is clear that trafficking in drug paraphernalia is neither a lesser-included offense of conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 nor attempt to possess with intent to distribute

6

cocaine in violation of 21 U.S.C. § 841(a)(1).  The sale of drug paraphernalia is prohibited by 21 U.S.C. § 863(a), which provides that "[i]t is unlawful for any person (1) to sell or offer for sale drug paraphernalia; (2) to use the mails or any other facility of interstate commerce to transport drug paraphernalia; or (3) to import or export drug paraphernalia."  Because 21 U.S.C. § 863 requires elements which are not required under 21 U.S.C. §§ 841(a)(1) and 846, the court concludes that trafficking drug paraphernalia is not a lesser-included offense in this case.[2]  Consequently, Thomas has failed to demonstrate that trial counsel's failure to request an instruction on trafficking in drug paraphernalia fell below an objective standard of reasonableness and prejudiced his case.

### 2.        *The Right to Remain Silent*

Thomas asserts that trial counsel should have objected to the prosecutor's improper comment during closing arguments regarding his failure to testify regarding certain evidence.  Specifically, Thomas contends that the prosecutor's remark that neither "Mr. Thomas nor his attorney can explain Government's Exhibit 20" was a violation of his right to remain silent. (Doc. No. 1 at p. 4B.)

During the defense's case, Thomas testified regarding his version of the events.  In *McGahee v. Massey*, 667 F.2d 1357, 1362 (11th Cir. 1982), the Court determined that a

---

[2]The term "drug paraphernalia" is define in 21 U.S.C. § 863(d).  As defined by this statute, the term plainly does not include drugs themselves.  Thus, the lesser offense requires an element not contained in the greater, namely that items constituting "drug paraphernalia" were involved in the crime charged.  The defendant's argument is premised on his contention that he did nothing but possess a drug press.  Even if true, that does not mean the government cannot charge him with more serious crimes of which he is guilty.

defendant cannot "testify in attack of evidence . . . and at the same time seek refuge behind

the shield of the Fifth Amendment."

> The fifth amendment stands as a sentinel for the protection of a defendant's constitutional right to remain silent. Concomitant with that right is the prohibition of prosecutorial comment on its exercise. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The right is not self-executing, however. When a defendant voluntarily testifies, he waives his fifth amendment right and places himself in the same position as any other witness, subject to cross examination as to matters revealed in his direct testimony. *Brown v. United States*, 356 U.S. 148, 78 S.Ct. 148, 2 L.Ed.2d 589 (1958); *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). Our precedent has made it clear "that when a defendant voluntarily testifies to the merits, and not just upon a purely collateral matter, the prosecutor may comment upon the defendant's failure to deny or explain incriminating facts already in evidence." *Calloway v. Wainwright*, 409 F.2d 59, 65 (5th Cir.), *cert. denied*, 395 U.S. 909, 89 S.Ct. 1752, 23 L.Ed.2d 222 (1969).

*Id.* *See also U.S. v. MacDonald*, 456 U.S. 1, 14 (1982) (noting that the defendant waived his

right to silence by testifying before the grand jury).

In this case, Thomas waived his Fifth Amendment right to silence by testifying at trial.

Therefore, the prosecutor's comment on Thomas' failure to explain matters concerning a tape

recording was not a violation of his constitutional rights. Consequently, Thomas has failed

to show how trial counsel's failure to object to the prosecutor's comment fell below an

objective standard of reasonableness and prejudiced his case. *See Strickland*, *supra.*

### 3.    *The Right to Confrontation*

Thomas asserts that trial counsel should have objected to the Government's

presentation of a chart depicting the photographs of the other alleged conspirators and listing the names and duties of each conspirator.  Specifically, he asserts that trial counsel's failure to cross-examine witnesses regarding the "truthfulness of the chart" violated his Sixth Amendment right to confrontation.  (Doc. No. 1 at 4C.)

The Government argues that trial counsel objected to introduction of the chart and that the trial court overruled her objection.  In addition, the Government maintains that Thomas was present and that his counsel cross-examined government witnesses during the trial.  Thomas does not dispute that trial counsel objected to introduction of the chart or that she cross-examined witnesses; however, Thomas asserts that his right to confront witnesses was violated because trial counsel failed to cross-examine government witnesses regarding "the truthfulness or falsity of the chart."  (Doc. No. 11 at p. 7.)   Because trial counsel objected to introduction of the chart and cross-examined witnesses regarding "their knowledge of [Thomas'] drug dealing with each one of them,"[3] the court concludes that Thomas has failed to demonstrate that trial counsel's failure to object on the basis of his right to confrontation or specifically question witnesses regarding the accuracy of the chart itself prejudiced his case.  *See Strickland*, *supra*.

### 4.      *Counsel's Concession*

Thomas contends that trial counsel was ineffective because she conceded to the court that the prosecution had proven a conspiracy.  In her affidavit, trial counsel denies that she

---

[3] (Doc. No. 11 at p. 7.)

conceded that Thomas was involved in the conspiracy; however, she admits that she argued

that "*if* this court found that there was a conspiracy that it was between other individuals and

*not* Mr. Thomas."  (Doc. No. 8 at p. 5.)

     During argument regarding the Defense's motion for judgment of acquittal, the

following transpired:

Ms. Frith:     . . . [T]he elements of a conspiracy are that two or more persons, in some way or manner, come to a mutual understanding to try to accomplish a common and unlawful plan and that the Defendant, knowing the unlawful purpose of that plan, willfully joined into it.

     Where is the co-conspirator that Ivory Thomas is supposed to have conspired with?  They put on Willie B. Ferguson.  Willie B. Ferguson told us – told this court he never had conspired or sold drugs or participated in any drug activity with Mr. Thomas.

     They put on Demetrius Moss, who was for the Johnson case.  When I asked him, he had never participated in any unlawful activity with my client.  Miss Akins didn't know my client. . . .

     Reginald Moss, Reggie told this Court the only way he knows my client is from the racetrack and the time that they had a foot race.  He has never, ever participated in any drug activity with my client.

     Where is the other person?  Where is the alleged co-conspirator, Your Honor? . . .

     We contend, Your Honor, that they have not proven to this Court that, one, he was involved in a conspiracy.  They have not proven to who he conspired with.  And the material that he is supposed to have attempted to possess, thinking it was drugs, is packaged differently, done differently, and is not of the same

10

character as the other stuff that they got out of Murillo's room which is supposed to be part of this same shipment.

Your Honor, we don't believe that the Government has proven its case to this Court, even giving the Government the benefit of the doubt, even in looking at all the evidence in the light most favorable to the Government.

The Court:    Putting aside your client's relationship, you concede that the Government has established a conspiracy here?

Ms. Frith:    They have established a conspiracy among these other people, but not including him, Your Honor.

The Court:    I understand.  But there was a conspiracy demonstrated.  In other words, the jury could find that?

Ms. Frith:    The jury could find there was a conspiracy between Willie B. –

The Court:    And the question was whether or not your client was a member of it.

Ms. Frith:    Yes, sir.

The Court:    That's at issue.

Ms. Frith:    Yes, sir.

(Criminal No. 2:00cr126, Trial Transcript Vol. 8 at R. III-8 thru III-11.)

Although trial counsel acknowledged that the evidence demonstrated that other individuals were involved in a conspiracy, she did not concede at any point in her argument that Thomas was a participant.  Instead, the record clearly demonstrates that trial counsel argued that there was no evidence that Thomas conspired with any of the individuals allegedly involved in the conspiracy.  The court therefore concludes that Thomas has failed

11

to show that counsel's acknowledgment that the Government established a conspiracy among other individuals prejudiced his case.  *See Strickland*, *supra*.

### 5.    *The Government's Reference to a "Clique"*

Thomas asserts that trial counsel was ineffective for failing to object to the Government's argument that he was part of a "clique."  Specifically, he contends that the prosecutor's comment that he was a member of a clique was misleading because Reginald Moss testified that the clique or group of conspirators included himself, Leo Simmons, Darren Boyd, and Terry Mitchell.  In her affidavit, trial counsel asserts that she did not object to the prosecutor's reference to a clique because the Government is permitted to argue its point of view and interpretation of the evidence.

During his closing argument, the prosecutor played parts of a tape recorded telephone conversation between Terry Mitchell, Willie Ferguson, and Reginald Moss, in which they discussed the arrest of Thomas, and he argued the following:

> . . .  Why would somebody pay somebody else fifty dollars to haul carpet cleaner or freshener – fifty dollars – when they have a car themselves. . . .
>
> I think the answer lies in what has been presented to you in Government's Exhibit Number 20 and 20A.  We're going to revisit the tape, and I want you to listen to this tape.  And I want you to hear Ship, or Terry Mitchell, refer to this man by name. He calls him Smoot.  And at the beginning of the tape, he refers to him, "My folks got roped off today" . . .
>
> You know why he refers to him as "my folks"?  Because

12

he's part of their clique. He's part of a poisonous clique that has been stopped by law enforcement, that has attracted the attention of law enforcement. And the other members of the conspiracy say, "Hey, Dog, we can't deal with you any more. The whole clique is poison. The whole block is hot. It's you all. It's on your end," all because one of the members of the clique, Ivory Thomas, got stopped. Listen to this tape. . . .

"My folks got roped off." Who got roped off? This man, "my folks." . . .

"So you got your boy a bond." "So you got your boy a bond." What does he say? "No, I don't even know where he is."

(Criminal Trial Transcript, Vol. 8 at R. III-90 thru III-91.)

During trial, the Government presented evidence demonstrating that Thomas was a friend or member of the alleged conspirators' group or "clique." For example, Reginald Moss acknowledged that his voice was on the tape recording in which he discussed the arrest and testified that Thomas' nickname was "Smoot." (Criminal Trial Transcript, Vol. 4 at R. II-117.) This court has reviewed the record and concludes that the prosecutor's reference to Thomas being a member of the conspirators' "clique" was a permissible comment based on logical inferences from all the evidence produced at trial. *See U.S. v. Diaz*, 190 F.3d 1247, 1255 (11th Cir. 1999) (prosecutor's remark regarding source of money was a permissible comment based on logical inferences from evidence produced at trial); *U.S. v. Smith*, 700 F.2d 627, 633 (11th Cir. 1983) (quoting *U.S. v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978) ("[A lawyer in closing argument has the] right to state his contention as to the conclusions that the jury should draw from the evidence. Therefore, an attorney's statements that indicate his

13

opinion or knowledge of the case as therefore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are the conclusions to be drawn from the evidence.")).  Thus, the court concludes that the prosecutor's comments regarding a "clique" were not improper.  Moreover, the court instructed the jury that the lawyers' comments are not evidence.  (R. III-125.)  Consequently, Thomas has failed to show that trial counsel's failure to object to the prosecutor's references to a "clique" prejudiced his case.  *See Strickland*, *supra.*

### 6.   *Knowledge of the Other Members of the Conspiracy*

Thomas asserts that trial counsel was ineffective for failing to object to the prosecutor's comment that "a conspirator need not know every member of the conspiracy before a verdict of guilt may be returned."  (Doc. No. 1 at p. 4-F.)  It is well-settled law that the Government is not required to prove that a defendant was aware of all other participants in a conspiracy.  *See*, *e.g.*, *Blumenthal v. U.S.*, 332 U.S. 539, 556-57 (1947); *U.S. v. Hansen*, 262 F.3d 1217, 1247 (11th Cir. 2001); *U.S. v. Reed*, 980 F.2d 1568, 1583 (11th Cir. 1993); *U.S. v. Pedrick*, 181 F.3d 1264, 1272 (11th Cir. 1999); *U.S. v. Jenkins*, 779 F.2d 606, 616-17 (11th Cir. 1986); *U.S. v. Luis-Gonzales*, 719 F.2d 1539, 1544 (11th Cir. 1983).  Thus, the prosecutor's comment regarding the participants in a conspiracy was a correct statement of law.[4]  Consequently, Thomas has failed to demonstrate that trial counsel's failure to object

---

[4]In his response to the government's answer, Thomas concedes that this statement of law is correct.  However, he argues that the government "capitalized" on the law "with the prejudicial intent of having the jury come to the conclusion that although no conspirator on trial testified that Petitioner was a

(continued...)

14

to the prosecutor's statement fell below and objective standard of reasonableness and prejudiced his case. *See Strickland*, *supra*.

### 7.    *The Failure to Request a Special Verdict Form*

Thomas asserts that trial counsel was ineffective for failing to request that the jury receive a special verdict form which specified the various drugs charged in Count I of the indictment. Specifically, he contends that the jury should have been allowed to specify whether he was guilty of conspiring to possess with intent to distribute powder cocaine, cocaine base, or marijuana. Thomas asseverates that trial counsel's failure to request a special verdict form caused him to be sentenced for conspiracy to possess with intent to distribute cocaine. Thomas believes that he would have received a different sentence if the jury found him guilty of conspiracy to possess with intent to distribute marijuana.

The court concludes that Thomas has failed to demonstrate that he suffered any prejudice as a result of counsel's failure to request a special verdict form. The maximum penalty for possession with intent to distribute 1000 kilograms or more of marijuana is life imprisonment. 21 U.S.C. § 841(b)(1)(A)(vii). The maximum penalty for possession with intent to distribute 5 grams or more of cocaine base or 500 grams or more of cocaine is 40 years' imprisonment. 21 U.S.C. §§ 841(b)(1)(B)(ii)(II) and (iii). Thus, the penalty for

---

(...continued)

drug dealer or was involved in the drug conspiracy there could be some conspirator not on trial that Petitioner knew and therefore a verdict of guilt can be arrived at." Def.'s Resp. at 9 (doc. # 11). This argument is nothing more than a variant of Thomas' insufficient evidence argument which was raised and rejected on direct appeal.

possession with intent to distribute 1000 kilograms of marijuana is more severe than the penalty for possession with intent to distribute more than 5 kilograms of cocaine and more than 5 grams of cocaine base.  In addition, Thomas' sentence of 78 months' imprisonment falls far below the maximum penalty which may be imposed for possession with intent to distribute marijuana.  Consequently, Thomas' contention that trial counsel was ineffective for failing to request a special verdict form listing marijuana separately from cocaine fails to satisfy the *Strickland* standard.

## B.  The Trial Transcript

Thomas asserts that his right to a direct appeal was violated because the trial record was altered.  Specifically, he alleges that a statement regarding the trial court's opinion of the evidence was omitted from the record and that part of his testimony at sentencing is inaccurately transcribed.  (Doc. No. 11 at p. 11.)

### 1.    The Judge's Opinion

Thomas alleges that the transcript of his sentencing hearing omits the judge's statement that "If I was on the jury, I would not have found the defendant guilty, but my hands are tied." (*Id.*) First, Thomas provides no evidence demonstrating that the judge made this specific comment at sentencing.  Nonetheless, the record clearly indicates that the judge made similar comments during the sentencing hearing.  For example, the judge stated, "The arguments you made to the jury, and they did not agree with you.  And in many respects, *had I been sitting there, I might have come to a different conclusion*." (Trial Transcript, Vol. 9,

16

R. 32.) (Emphasis added.)  The judge also stated, "Well, I must say it is not the strongest case I have ever heard.  But nevertheless, I think there was enough evidence to support the jury's verdict." (*Id*. at R. 33.)  In addition, trial counsel stated to the court, "I hate to quote you, but even you said this morning, 'If I had been there, I might have come up with a different frame of mind.'" (*Id*. at R. 37.)  Therefore, even assuming *arguendo* that the judge made such a statement, the trial judge's omitted comment would have been merely cumulative to his other statements regarding Thomas' case.  Moreover, the judge's comments are not evidence.  Thus, the court cannot conclude, nor has Thomas demonstrated, that the judge's omitted comment is "of such a material nature as to make his appellate review meaningless or to successfully pursue post-conviction relief." *Carmona v. Butler*, [Civ.A.No. 88-1360] 1988 WL 86782, at *4 (E.D. La., July 27, 1988).  *Cf. Schwander v. Blackburn*, 750 F.2d 494, 497 (5th Cir. 1985) (noting that a defendant is entitled to a record of "sufficient completeness" to allow him to present his claims on appeal).  Thomas has presented nothing to the court to demonstrate that he was hindered in any way in presenting on appeal his claim that the evidence was insufficient to support his conviction.

### 2.    Thomas' Testimony

Thomas alleges that, although Willie B. Ferguson testified during the Government's case that "he never knew petitioner to be nothing but a pool slick,"[5] the transcript incorrectly

---

[5] The transcript indicates that Ferguson testified, "Well, me and Ivory, we've shot pool before.  And he's a good pool shooter, slick.  And we beat people out of money, and we gamble together."  (Vol. 3, R. I-110.)

states that he (Thomas) testified at sentencing that "Willie B. *never* testified that he was a pool slick." (Doc. No. 11 at p. 11.)  The sentencing transcript indicates that Thomas testified, "When these guys were on the witness stand, Mr. Ferguson says nothing about a pool slick." (Trial Transcript, Vol. 9, R. 32.)  Thomas has failed to point to any evidence demonstrating that the sentencing transcript is inaccurate.  In addition, he has failed to show that his reference to Ferguson's testimony that he was known as a good pool player would have been material on appeal.  *See Carmona*, *supra.*

Based on the foregoing, the court concludes that the alleged omissions or inaccuracies in the trial transcript had no effect on Thomas' ability to challenge his criminal conviction on appeal.  Because Thomas has failed to specify any alleged inaccuracies or omissions of constitutional magnitude, the court concludes that Thomas is entitled to no relief with respect to his claim that his right to a direct appeal was violated.

### C.  Cumulative Effect of the Errors

Thomas argues that even if no single claim was so prejudicial as to amount to a deprivation of due process, the cumulative effect produced a fundamentally unfair trial.  This claim lacks merit for two reasons.  First, the court has found no merit to Thomas' claims. Thus, there can be no adverse cumulative effect.

Secondly, to the extent that Thomas' ineffective assistance of counsel claims implicate *United States v. Cronic*, 466 U.S. 648 (1984), he likewise is entitled to no relief.  In *Cronic*, the Court found that there are "circumstances that are so likely to prejudice the accused that

the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658. In these limited circumstances, a defendant need not make the specific showing of prejudice required by *Strickland*. *Id.* at 659. An ineffective assistance of counsel claim should be analyzed under *Cronic*, rather than *Strickland*, only if the defendant either "is denied counsel at a critical stage of his trial or if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*; *Hunter v. Moore*, 304 F.3d 1066, 1069 (11th Cir. 2002). The record before the court demonstrates that Thomas was represented by counsel at every critical stage of his trial and that meaningful adversarial testing of the Government's case took place at trial and on appeal. Thus, for the reasons as stated, the court concludes that Thomas is not entitled to any relief on any of his cumulative effect claims premised upon a claim of ineffective assistance of trial counsel.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion be denied as the claims presented therein entitle the defendant to no relief. It is further

ORDERED that the parties shall file any objections to this Recommendation **on or before May 2, 2006**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of

issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).

Done this 18th day of April, 2006.


_____ /s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE